## MORTON *v.* MORTON.

Opinion delivered April 29, 1907.

1. DEED—PRESUMPTION OF DELIVERY.—The production of a deed by the grantee raises a presumption of delivery which can be overcome only by clear and convicing evidence. (Page 495.)

2. SAME—CONSIDERATION—IMPEACHMENT.—The statement of the amount of consideration in a deed and acknowledgment of its receipt are *prima facie* evidence, which may be overthrown by parol evidence. (Page 496.)

Appeal from Washington Chancery Court; *T. H. Humphreys,* Chancellor; affirmed.

## STATEMENT BY THE COURT.

John M. Morton owned and lived on a farm in Washington County, Arkansas, consisting of more than 200 acres, and valued at about six thousand dollars. He was an old bachelor. He died on the 29th of November, 1904. He left surviving him Mrs. Nancy Staples and Mrs. W. D. Rogers, his sisters, and W. H. Morton, R. M. Morton and Ed Morton, children of a deceased brother, James A. Morton, and J. B. Morton, W. N. Morton, Hugh Morton, James Morton, Mrs. Ona Ash and Hattie Morton, children of another deceased brother, W. T. Morton. On the 22d day of September, 1904, J. M. Morton made a warranty deed to his nephew, J. B. Morton, to the farm on which he, John M. Morton, lived at the time of his death. The deed recites: "For and in consideration of the sum of $3,000 to me in hand paid by J. B. Morton, the receipt whereof is hereby acknowledged, have granted, bargained and sold, etc.," describing the lands. The deed was acknowledged on the day it was signed before H. W. Dorman, a justice of the peace.

This suit was instituted by W. H. Morton and W. D. Rogers as administrators of the estate of John M. Morton, and by W. H. Morton in his own right and R. M. Morton, J. E. Morton, Mrs. Nancy Staples and Mrs. W. D. Rogers as heirs at law of John M. Morton, against J. B. (Bert) Morton, W. N. Morton, Hugh Morton, James Morton, Mrs. Ona Ash, Hattie Morton and Mrs. Agnes Morton. The heirs of John M. Morton who did not join in the complaint were made parties defendant. The object of the suit was to cancel the deed, provided same had not been delivered to J. B. Morton by John M. Morton, of which plaintiffs alleged they were not advised, and if the deed had been delivered during the lifetime of John M. Morton, plaintiffs alleged that it was so delivered upon the agreement of J. B. Morton to pay John M. Morton the sum of $3,000, which he had not paid.

Accordingly there were alternative prayers for a cancellation of the deed if the court should find that same had not been delivered; or, if the court should find that same had been delivered, a judgment in favor of the administrators for the sum of $3,000, with interest, and that the judgment be declared a lien on the lands mentioned in the deed.

The defendant, J. B. Morton, answered, denying that the deed had not been delivered to him by John M. Morton in his lifetime, and specifically alleging that it had been so delivered to him in the lifetime of John M. Morton, and alleging that, while the deed expressed upon its face a consideration of $3,000, the real consideration for such conveyance was that said J. B. Morton should live with the said John M. Morton and furnish him a home, and provide for him such care and attention as he should need during his natural life, and pay the costs and expenses of his burial after his death; and for the further consideration of his love and affection for the defendant, J. B. Morton, and services which he and his wife had already rendered to him; and alleging that he had complied with the contract and agreement on his part, and that the $3,000 consideration was never intended to be paid.

The other defendants, consisting of the mother and brothers and sisters of the defendant, J. B. Morton, were all summoned, but did not answer.

The cause was heard upon the pleadings and exhibits, depositions of various witnesses and the oral testimony of R. M. Morton, W. H. Morton and W. D. Rogers, plaintiffs; and the oral testimony of J. B. Morton, defendant, and the oral testimony of J. S. Davis.

The chancellor found the issues as between the administrators and J. B. Morton in favor of the administrators, and found that the deed had been delivered in the lifetime of John M. Morton, deceased, to J. B. Morton, defendant; and found that J. B. Morton had agreed to pay to John M. Morton the consideration of $3,000, and had paid no part thereof, and rendered judgment against J. B. Morton for said sum and six per cent. interest, and declared a lien upon the land; to which judgment the defendant, J. B. Morton, excepted and prayed an appeal, which was granted.

The chancellor, having found that the deed was delivered to J. B. Morton, refused the prayer of plaintiffs for cancellation, and from the finding and decree in this respect the plaintiffs, Mrs. Nancy Staples, Mrs. W. D. Rogers, W. H. Morton in his own right, R. M. Morton and J. E. Morton excepted, and prayed and were granted an appeal.

Other facts stated in the opinion.

*R. J. Wilson* and *B. R. Davidson,* for appellants.

1.  The proof that the deed was delivered is overwhelming; but, even in the absence of such proof, the law would presume that it was delivered on the date of its execution. 6 Atl. 833; 14 Peters, 322; 7 Am. St. Rep. 151; 131 Ill. 27; 125 Ill. 430; 16 Am. Dec. 83; 25 Ark. 152.

2.  The statement in a deed of the amount of consideration and acknowledgment of its receipt are *prima facie* evidence only, and may be overthrown by parol proof or by circumstances showing that no consideration at all was paid or a different one from that expressed in the deed. 15 Ark. 275.

In family settlements the adequacy of consideration is not to be questioned. 2 Am. & Eng. Enc. of Law, 877. Deeds making family settlements are upheld in equity unless the proof is clear and conclusive that the grantor retained possession of the deed. 9 Am. & Eng. Enc. of Law, 97; 140 Ind. 533.

An instrument accknowledging receipt of money does not import an admission of indebtedness. 17 Ark. 41. See, also, 21 Ark. 255; 15 Atl. 452.

A recital of an amount as paid in a family deed does not create an indebtedness, though not paid. 98 N. W. 158.

To establish an indebtedness in an action of this kind, the evidence should be clear, unequivocal, decisive, convincing. 75 Ark. 72; 79 Ark. 418; 81 Ark. 166.

*E. S. McDaniel* and *Walker & Walker,* for appellees.

WOOD, J., (after stating the facts.) Two questions are presented: First, was the deed delivered to J. B. Morton by John M. Morton? Second, was the deed executed for a consideration of $3,000.00?

1.  Several witnesses testified unequivocally that they saw the deed in the hands of J. B. Morton, the grantee, prior to the death of John M. Morton. There is no evidence to the contrary, and, even without this affirmative evidence, J. B. Morton, the grantee, before and after the death of the grantor is found in possession of and produces the deed. The production of a deed by the grantee is *prima facie* evidence of its delivery. 2

Greenl. Ev. § 257; *Maynard* v. *Maynard,* 10 Mass. 455; *Hatch* v. *Haskins,* 17 Me. 391; *Games* v. *Stiles,* 14 Peters, 322.

In *Tunison* v. *Chamblin,* 88 Ill. 379, it is said: "When a deed, duly executed, is found in the hands of a grantee, there is a strong implication that it has been delivered, and only clear and convincing evidence can overcome the presumption." See also *Ward* v. *Dougherty,* 75 Cal. 240, 7 Am. St. Rep. 151; *Griffin* v. *Griffin,* 125 Ill. 430. See *Haskill* v. *Sevier,* 25 Ark. 152.

Cross appellants seek to overcome the presumption, indeed the positive proof, of delivery of the deed by circumstances growing out of various declarations and acts of J. B. Morton before and after the death of his uncle which they argue lead to the conclusion that the deed of John M. Morton was never delivered to J. B. Morton, but on the contrary tend to show that he abstracted the same from John M. Morton's papers after his death, and that he had same recorded the day after his burial. Counsel build a strong argument on various circumstances in proof that the conduct of J. B. Morton after the burial of his uncle in connection with the disposition of his papers was "not clear, was not right, was not legal." But, without going into detail, we must say we find no testimony whatever that would warrant a finding by the chancellor, or by this court, that the deed to J. B. Morton was not delivered.

It is unnecessary to notice in detail the various circumstances pressed by learned counsel for cross appellants on the question of delivery. The question is purely one of fact, and it suffices to say that the decided preponderance of the evidence, in our opinion, supports the conclusion of the chancellor that the deed was delivered. Indeed, to have found otherwise would have been an acceptance of suspicion for proof.

2. Was the deed based upon a consideration of $3,000? Appellant J. B. Morton contends that the deed was upon the consideration that he should furnish his uncle a home and provide him with such care and attention as he should need during his natural life, and pay the costs and expenses of his burial, and the further consideration of natural love and affection.

But little aid can be gathered from the deed itself. In *Pate* v. *Johnson,* 15 Ark. 275, this court said: "The recital of

the consideration money and its acquittance in a deed is only prima facie evidence; and parol proof is admissible to contradict it. * * * It has been often held that the usual clause in a deed of land, or other property, acknowledging the receipt, and declaring an acquittance of the consideration money, even although it is followed by a receipt of the same money indorsed on the deed, is not only inconclusive in an action for the purchase money, but some cases hold it to be evidence of the lowest grade; that it is a mere formal part of a deed, and that such receipts are given every day, when nothing has been paid. *Bowen* v. *Bell*, 20 Johns. 338; 2 Phil. Ev. Cowen & Hill's Notes, 217, and cases there cited.

"The weight of authority, however, undoubtedly is that the statement of the amount of the consideration in a deed is *prima facie* evidence in an action for the purchase money, or in any proceeding where the deed may be used as evidence. But it is nothing more, and hence it is competent to overthrow the *prima facie* cause by parol proof or circumstances, and show that no consideration was paid at all, or a different one from that expressed. This is of almost daily practice in the courts."

To sustain the contention that the deed, if delivered, was based upon a consideration of $3,000, appellees, the administrators, show, in addition to the consideration named in the deed, that the justice who wrote the deed and before whom same was acknowledged asked John M. Morton what the consideration was, and he said $3,000. They show that the land was worth between six and eight thousand dollars; that John M. Morton had two married sisters, Mrs. Nancy Staples and Mrs. W. D. Rogers; that he lived in the same neighborhood with these, and at times when he had been sick he had made his home temporarily with them. They showed that the relations between John M. Morton and his sisters and his nephews, W. H. Morton, R. M. Morton and Ed. Morton, children of his brother, James A. Morton, were of the most cordial and friendly nature. As to W. H. Morton, they show that his relations with his uncle in the spring before his death in the fall were those of a trusted agent to collect money for him on certain notes. By many witnesses who were neighbors and intimate friends they show that there was never any disagreement or ill-will between

John M. Morton, and his relatives, the appellees, of which they had ever heard. On the other hand, appellant J. B. Morton, to sustain his contention, proved by himself that the consideration of $3,000 was but nominal; that the real consideration of the deed was the natural love and affection of his uncle for him and the promise on his part, which he fulfilled, to provide his uncle with a home and board for himself and horse during his life. He showed that he had lived with his uncle for several years, renting the place from him, and boarding and caring for his uncle. He showed by several witnesses that his uncle had expressed a preference for him over his other relatives, had frequently expressed the intention of giving him the place, and finally when he had made up his mind to go West, that his uncle, to keep him from doing this and to induce him to stay, gave him the land upon the consideration before mentioned.

Appellees, to contradict and rebut the testimony of appellant, J. B. Morton, and to controvert the statements in the answer, showed that he refused to have anything to do with arranging for the funeral expenses, that on the evening just after the funeral he refused to turn over the papers of John M. Morton after he, J. B. Morton, had agreed with other relatives of John M. Morton that he would do so; that he kept the papers over night, and had the opportunity to have abstracted any of the papers that his interest or inclination may have led him to destroy; that, when questioned concerning his uncle's notes and papers thereafter, he was reluctant to tell about them, and, when finally prevailed upon to tell, made evasive and elusive answers. It will be observed that the whole question was one of fact depending upon the weight of the evidence. The chancellor had some of the witnesses before him who testified orally.

Under the circumstances, considering the palpable contradictions of the appellant's testimony by so many witnesses, we think the finding of the chancellor should be especially persuasive. We would not have disturbed his finding on the facts had his decision been in favor of the appellant J. B. Morton on the question of the gift, i. e., the consideration set up by him. But we can not say that the chancellor's finding in favor of appellees on this issue is against the preponderance of the evidence. It is a close question, and has been one most difficult

for us to determine; but upon the whole we conclude that the chancellor was correct in his findings and decree, and the same are therefore affirmed.