## DODWELL *v.* MOUND CITY SAWMILL COMPANY.

### Opinion delivered May 3, 1909.

1. TRIAL—REFUSAL TO GIVE ABSTRACT INSTRUCTION.—It was not error to refuse to give an instruction that was not supported by the evidence. (Page 289.)

2. PAYMENT—PRESUMPTION FROM RECITAL OF DEED.—Production by the grantee of a deed acknowledging payment of the purchase money is *prima facie* evidence of such payment. (Page 290.)

3. TRIAL—JURY TAKING PAPERS WITH THEM.—It is within the discretion of the trial court to permit the jury to take with them papers which have been exhibited to and examined by them during the trial, and whose authenticity has not been questioned. (Page 291.)

Appeal from Clark Circuit Court; *Jacob M. Carter,* Judge; affirmed.

*John H. Crawford,* for appellant.

Services intended at the time to be gratuitous can not afterwards be used to raise an implied contract to pay for them. 33 Ark. 215. When one grants railroad terminal facilities without any intention of charging therefor, he cannot afterwards change his mind and charge for same. 68 Ark. 146. When services are rendered gratuitously, a subsequent promise to pay for them is not binding. 67 Ia. 591. The instruction unduly singling out the bond for title and the deed was erroneous. 75 Ark. 76; 77 *Id.* 418. It invaded the province of the jury, and was within the inhibition of the Const. sec. 23, art. 7.

*McMillan & McMillan,* for appellee.

Possession of a deed acknowledging receipt of the purchase money after a note given therefor matured would be *prima facie* evidence that the note had been paid, if the jury believed that the note was given for part of the purchase price.  11 Ark. 139; 15 *Id.* 275; 18 *Id.* 65; 54 *Id.* 195; 55 *Id.* 112; 75 *Id.* 94.  A deed acknowledging the receipt of the purchase money is a receipt, and is *prima facie* evidence that the money has been paid.  46 Ark. 217; 39 *Id.* 580.  There being no statute forbidding it, it was proper to send the papers to the jury room.  Thompson on Trials, § 2575.

FRAUENTHAL, J.  The plaintiff, Thomas Dodwell, instituted this suit in the circuit court of Clark County against the Mound City Sawmill Company, a non-resident corporation, obtaining constructive service of process for said defendant, and at the same time suing out a writ of general attachment, which was levied on property of the defendant in that county.  The suit was founded on a promissory note for $375 and interest. At the return term of said court a judgment by default was given on September 11, 1907, in favor of the plaintiff for his debt and condemning the property levied upon under the attachment proceedings to be sold for the satisfaction of the judgment.  At the following term of said court, on February 4, 1908, the defendant filed its motion to have the case retried, with bond for costs.  And thereupon, with leave of court, defendant filed its answer and setoff, in which it alleged that the note sued on was paid; that the plaintiff was indebted to it for two mules, wagon and harness in the sum of $325, and for the usable value of the mules for the years 1904, 1905 and 1906 in the sum of $175, making a total of $500.

The plaintiff filed a reply, in which he alleged that the mules were placed with him by the defendant to feed, care for and sell for its account with him; that for the feed and care of the mules from September 4, 1903, when they were placed with him, until January 1, 1905, defendant was due to him $310, and was due him $45 for certain attention given to the diseased shoulders of the mules, and also $77.80 for interest on these sums, making a total of $430, for these items set out in his reply.

The case was tried by a jury, which returned a verdict in favor of the defendant for $175.  From the judgment rendered thereon the plaintiff brings this appeal.

The matters involved in this case were questions of fact and peculiarly within the province of the jury's determination; and there was sufficient evidence to sustain the jury's finding.

It is claimed by the defendant that the court committed an error in refusing to give the instruction No. 2 asked for by him. This instruction in substance stated that the defendant could not recover for the usable value of the mules owned by it if at the time the mules were being used by plaintiff it was the intention of defendant to make no charge therefor. This instruction was not supported by any evidence in the case, and was therefore abstract. It appears from the testimony that when the plaintiff took possession of the mules there was no agreement made relative to any payment by defendant for the feed and care of the mules, and no agreement of any kind for the payment by plaintiff for the use of the mules.

There was nothing said or suggested relative to these matters. The manager of defendant was not present when plaintiff took possession of the mules; but it seems that, said manager being a non-resident and the mules at the place in Clark County where plaintiff was resident, the plaintiff with the permission of defendant took possession of the mules and fed and cared for and worked them until in 1907 when plaintiff sold the mules for $325. The plaintiff did not testify relative to any intention, either expressed or implied, on the part of the defendant not to charge for the use of the mules, neither did he testify relative to any intention on his part to charge or not to charge for feeding and caring for the mules. The only statement in the record relative to this was made by the defendant's manager, who said he intended to make no charge for the use of the mules in event the plaintiff made no charge for the feeding and keeping them; that is to say, he expected that the one would offset the other. This testimony was not sufficient upon which to base the instruction asked for by plaintiff. For, if he desired this element of the case submitted to the jury, he should have asked the court to instruct the jury that if it was the intention of the plaintiff to make no charge for the feeding and caring for the mules; and if it was the intention, in that event, of the defendant to make no charge for

the use of the mules, then neither party could recover for these respective items.

But the plaintiff did not request the giving of any such instruction; and the court, under the evidence in the case, did not err in refusing to give the above instruction as asked for by him.

The plaintiff urges that the court erred in giving the following instruction on behalf of the defendant:

"If you find from the preponderance of the evidence that the note sued on in this action was given by the defendant for part of the purchase money of N ½ of N. W. ¼ and N ½ of N. E. ¼ of section 20, township 6 south, range 19 west, and at the time the note was given the plaintiff gave defendant a bond for title agreeing to convey by warranty deed the said land upon payment of the purchase money according to the terms of said bond for title, and you find that on October 18, 1902, the plaintiff did execute and deliver to the defendant a warranty deed conveying said land and acknowledging the receipt of the purchase money, the possession of said deed is *prima facie* evidence that the note sued on has been paid."

It appears from the testimony that the plaintiff and his wife sold to the defendant a tract of land, and on October 14, 1901, executed to it a bond for title by which they agreed upon the payment of a certain note for $375, dated October 14, 1901, and due October 14, 1902, with 8 per cent. interest, and also a note for $160, they would convey by deed to defendant the land described in the above instruction.

Thereafter, on October 18, 1902, the plaintiff did execute to defendant a deed for said land, and in said deed acknowledged receipt of the payment of said two notes. Now, the note for $375 herein sued on bears the exact amount, date, maturity, payee and rate of interest of the above note of that amount set out in said bond for title, and also contains the following clause: "This note is based upon bond for title of even date herewith."

The defendant's manager testified that the note sued on by plaintiff is the note given by defendant for the part purchase money of said land and was paid by defendant, and thereupon the deed was executed in which acknowledgment of receipt of payment is made.

The plaintiff testified that the note sued on was executed

for the purchase money of other land, and that this note was not paid. The plaintiff urges that this instruction was erroneous, because it tells the jury that possession of the deed was *prima facie* evidence that the note sued on was paid. But the court in this instruction further told the jury that certain findings of fact must be made by the jury before this would follow. The jury must first find from the preponderance of the testimony that the note sued on was given for part of the purchase money of the land which is described in the instruction, and that it was the same note mentioned in the bond for title executed by plaintiff in which it was provided that upon the payment of this note the plaintiff would execute to defendant a deed for the land, and that in pursuance thereof plaintiff did execute this deed in which the receipt of the payment of this note was acknowledged. Finding the above to be the facts, the jury were instructed that then such deed would be *prima facie* evidence of such payment. Under the circumstances of this case we do not think the court erred in giving said instruction. *Vaugine* v. *Taylor,* 18 Ark. 65; *St. Louis & N. A. Rd. Co.* v. *Crandell,* 75 Ark. 89; *Morton* v. *Morton,* 82 Ark. 492; 13 Cyc. 735.

Sometime after the jury had gone from the bar to deliberate, the court allowed them to take to the jury room the note sued on, the note for $160, and the bond for title, over the objection of plaintiff; and plaintiff urges this as a prejudicial error.

We have examined carefully into the evidence in this case and these papers, and we find that no prejudice resulted or could have resulted from permitting the jury to have these papers.

The authenticity of these papers was not questioned, and there was not a particle of testimony or a suggestion to impeach their contents. These papers had been exhibited to and examined by the jury during the progress of the trial. The inspection of the papers by the jury afterwards in the jury room could not, under these circumstances, have had any prejudical effect. To imagine any such vitiating effect in this case by the inspection by the jury of these papers in the jury room would involve the impeachment of the capacity and the intelligence of the jurors to discharge the functions of their office. Thompson on Trials, § 2575; Baylies, Trial Practice, p. 338; 17 Am. & Eng. Ency.

Law, 1239; *Little Schuylkill Navigation Co.* v. *Richards,* 57 Pa. St. 142.

Finding no error, the judgment of the lower court is affirmed.