Nelda WILLIAMS *v.* FIRST SECURITY BANK OF
SEARCY, ARKANSAS, as Administrator of the Estate of
Brenda Marie PAYNE, Deceased, et al.

87-116                                              738 S.W.2d 99

Supreme Court of Arkansas
Opinion delivered October 26, 1987

*Margaret Bunn* of *Odell Pollard, P.A.*, for appellant.

*The McMath Law Firm, Art Anderson*, and *Jim Petty*, for appellee.

STEELE HAYS, Justice. This wrongful death action was brought by the administrator and family of Brenda Payne, who died after being struck by an automobile driven by appellant Nelda Williams. The accident occurred at night during a misty rain. Mrs. Payne was walking on the right side of Highway 36 with her back to east bound traffic. Mrs. Williams was driving east and did not see Mrs. Payne until an instant before the impact.

The right front of the Williams car struck Mrs. Payne, knocking her to the side of the road, and causing the injuries from which she expired some three hours later. The jury awarded Mrs. Payne's husband and two children $75,000 each and $10,000 to the estate. Mrs. Williams brings this appeal.

■■ Appellant's primary argument for reversal is the trial court erred in refusing to direct a verdict for the defendant or to enter judgment notwithstanding the verdict because there was no substantial evidence to establish the defendant's negligence. We have held that a directed verdict for the defendant is proper only when there is no substantial evidence from which the jurors as reasonable persons could find for the plaintiff. The trial judge must give to the non-movant's evidence its highest probative value, taking into account all reasonable inferences that may be deduced from it. On appeal we will not reverse if there is any substantial evidence on which the jury could have based a finding of negligence. *Flynn* v. *McIlroy Bank & Trust Co.*, 287 Ark. 190, 697 S.W.2d 114 (1985); *Kelly* v. *Cessna*, 282 Ark. 408, 668 S.W.2d 944 (1984).

The first officer at the scene testified that Mrs. Payne's body was found on the shoulder of the highway at a point where a curve in the highway began. He said there was no fog, that there was visibility for about a quarter of a mile and that he had no trouble seeing the road. He testified that Mrs. Payne was wearing a light coat. Another witness who drove past Mrs. Payne on the highway just before the accident said she could see her walking on the shoulder of the road and wearing a white or light-colored sweater. The witness further testified she could see Mrs. Payne for about four or five blocks without difficulty, did not remember any fog that night, and saw Mrs. Payne in time to have stopped even at fifty miles per hour. The treating physician said the impact had resulted in serious injuries, the equivalent of a fall from a ten-story building.

■ Pedestrians as well as motorists are entitled to use the public highways and each must act with regard to the presence of the other. The driver of a motor vehicle must anticipate the presence of pedestrians on streets and highways and use ordinary care to avoid injuring them. *Kelly* v. *Cessna, supra; Thomas, Spec. Adm'r* v. *Newman*, 262 Ark. 42, 553 S.W.2d 459 (1977).

The driver has a duty to anticipate the presence of pedestrians on the highway and a duty to keep a lookout. *Kelly, supra; Yocum* v. *Holmes*, 222 Ark. 251, 258 S.W.2d 535 (1953).

Under the facts presented to the jury it was a reasonable inference that Mrs. Payne was visible to oncoming motorists and that Mrs. Williams had failed to keep a proper lookout for pedestrians on or near the road. The appellee's case was strengthened by Mrs. Williams's testimony that she did not see Mrs. Payne until she was a car length from her and that she was concentrating on keeping her hood ornament aligned with the white line on the right-hand side of the highway. Additionally, a driver who passed in the opposite direction as the accident occurred testified that Mrs. Williams made no attempt to stop or avoid the collision and the officer who investigated the accident testified he found no skid marks behind Mrs. Williams's car.

These additional facts provide further proof from which the jury could find that appellant was not keeping a lookout for pedestrians and did not see Mrs. Payne until almost the moment of impact. We stated in *Kelly, supra*, that the fact that the driver did not see the pedestrian until immediately before the impact is substantial evidence that he was not keeping a proper lookout for pedestrians.

Appellant next argues the trial court erred by refusing to instruct the jury that Arkansas Highway Department safety rules require that pedestrians on state highways travel on the left side of the highway. The appellant proffered the following instruction:

> The safety rules of the Arkansas Highway Department require pedestrians to travel on the left side of the highway.

The trial court refused the instruction because there was no evidence that such a regulation exists. Appellant relies on two cases which allude to a requirement that pedestrians walk on the left of the highway. In *Snow* v. *Riggs*, 172 Ark. 835, 290 S.W. 591 (1927) we said that while the Highway Department was authorized to make certain rules and regulations for motor vehicles, the statutory authorization in that case did not encompass the authority to make regulations for pedestrians and specifically not the rule at issue in that case—that pedestrians walk on the left,

facing traffic. Therefore we held the rule was of no effect. In *Haralson* v. *Jones Truck Lines*, 223 Ark. 813, 270 S.W.2d 892 (1954), we mentioned only in dicta that the victim was walking on the left side of the highway "as recommended by the safety rules of the Highway Department." Given the finding in *Snow*, that the "rule" was later mentioned only in dicta as a *recommendation* by the Highway Department, and that the appellant presented no evidence that a rule of the Highway Department existed which required pedestrians to walk on the left, there was no basis for appellant's instruction as offered.

■ We should note that we stated in *Haralson, supra*, that one who walks on the right-hand side of the street, with his back to traffic, is not necessarily guilty of contributory negligence. A fair interpretation of this statement would be that walking on the right with one's back to the traffic may be some evidence of negligence. However, this was not the instruction requested. Where a party is entitled to an instruction on an issue but requests an erroneous instruction, he may not complain of failure to charge on the subject. *Newman* v. *Peay*, 117 Ark. 579, 176 S.W. 143 (1915). It is a party's duty to prepare and request a correct instruction. *Bovay* v. *McGahhey*, 143 Ark. 135, 219 S.W. 1026 (1920). A trial court need not give an instruction which needs explanation, modification or qualification. *Dodson Creek, Inc.* v. *Fred Walton Realty*, 2 Ark. App. 128, 620 S.W.2d 947 (1981); *Reynolds* v. *Ashabranner*, 212 Ark. 718, 207 S.W.2d 304 (1948).

Another contention is that the trial court erred when it refused to instruct the jury on the legal definition of sidewalk. The requested instruction reads:

> The definition of sidewalk is that portion of a street between the curb lines, or the lateral lines of a roadway and the adjacent property lines intended for the use of pedestrians. Ark. Stat. Ann. § 75-412(d).

■ Appellant argued this instruction should be given as it states where pedestrians are supposed to be in relationship to a highway or road and informs the jury as to the victim's duty in this case. We disagree with appellant's interpretation of this statute, or its application to this case. This statute is part of the Motor Vehicle Act of 1937, and defines six terms such as "roadway,"

"highway" and "sidewalk." These definitions do not set out rules for either pedestrians or motorists, but merely define the terms which appear throughout the act. The phrase, "intended for pedestrian use," is merely descriptive and not directive. Even if we were to allow this definition in to show there was an area provided for pedestrians to walk, there simply was no evidence presented in this case that the shoulder of the road where the accident occurred was intended to be used by pedestrians, either by law or by custom. As the instruction had no application to the facts in this case it was not error to refuse it.

As her last point, appellant contends the trial court erred when it allowed the jury to take a document not admitted in evidence into the jury room during deliberations. The appellee's last witness was Dr. Ralph Scott, an economics expert who testified as to the financial impact occasioned by the death of Mrs. Payne. During his testimony he wrote certain figures on a large tablet to aid the jury in understanding his testimony. During the deliberations the jury asked for these sheets and, over appellant's objections, the court allowed the jury to have them for its further deliberations. Appellant contends this was prejudicial error because the jury could focus on the "bottom line" of Scott's testimony rather than his underlying testimony and it placed undue emphasis on one aspect of the case—damages. Appellant cites no authority for what she claims as prejudice, or that the practice of letting the jury take exhibits into the jury room is even error. Our cases show that such actions are not necessarily error and there are valid reasons to allow the jury to view certain exhibits during deliberation.

While we have made a distinction between evidence admitted and not admitted which is taken into deliberation by the jury, see *Dickerson Construction Co., Inc.* v. *Dozier*, 266 Ark. 345, 584 S.W.2d 36 (1979), that is not the determining factor. Rather, if the item is an accurate reflection of the testimony that will be a legitimate memory aid to the jury and affords no prejudice to the opposing party, we have found it within the discretion of the trial court to allow it. *Swanson* v. *Johnson*, 212 Ark. 340, 205 S.W.2d 340 (1947); *Hickman* v. *Ford & Co.*, 43 Ark. 207 (1884).

In *Dodwell* v. *Mound City Sawmill Co.*, 90 Ark. 287, 119

S.W. 262 (1909), a suit to recover on a promissory note, the trial court granted the jury's request to take into the jury room, the note sued on and other documents involved in the suit. On the issue of prejudice, we said:

> The authenticity of these papers was not questioned, and there was not a particle of testimony or a suggestion to impeach their contents. These papers had been exhibited to and examined by the jury during the progress of the trial. The inspection of the papers by the jury afterwards in the jury room could not under these circumstances have had any prejudicial effect. To imagine any such vitiating effect in this case by the inspection by the jury of these papers in the jury room would involve the impeachment of the capacity and the intelligence of the jurors to discharge the functions of their office.

To the same effect, see *Eackles* v. *Perry-Austen Bowling Products, Inc.*, 275 Ark. 235, 628 S.W.2d 869 (1982). In determining that no prejudice resulted from this incident, we note that the matter dealt with an issue which was not in testimonial dispute, as with the issue of liability for example. See *People* v. *Martinez*, 82 Cal. App. 3d 1, 147 Cal. Rptr. 208 (1978). Here there was no contention that the figures given to the jury were not exactly what the witness had testified to, nor had the appellant even objected to or contested the accuracy of any of the figures when they were presented by the witness. The figures were a legitimate memory aid for the jury and there was no abuse of discretion by the court in allowing the jury to review the figures.

Affirmed.