CITY OF FAYETTEVILLE, Arkansas *v.* Earnest
STANBERRY and Carol Stanberry, Husband and Wife

91-34                                                807 S.W.2d 26

Supreme Court of Arkansas
Opinion delivered April 15, 1991
[Rehearing denied May 6, 1991.*]

---

*James N. McCord*, for appellant.

*Jones & Hixon*, by: *Lewis D. Jones* and *Kenneth S. Hixon*, for appellees.

STEELE HAYS, Justice. This case comes to us from an inverse condemnation judgment against the City of Fayetteville, Arkansas. The City has appealed, challenging instructions to the jury and an award of prejudgment interest.

The dispute stems from the construction of a 24" sewer line on lands of Earnest and Carol Stanberry, appellees. The City obtained an easement from the Stanberrys in 1968. After construction of the line, raw sewage overflowed on appellees' property. The overflows began in 1969 and continued periodically until the time of trial, with one particularly severe overflow in March 1984. The appellees contacted the City frequently and were assured the problem would be corrected, but the overflows continued.

In 1986 a request by the City for an additional sewer line across part of the appellees' property was refused. On October 20, 1986, the City filed a suit for condemnation to build the additional line and the appellees filed their own suit against the City some months later, alleging that the years of overflows and odor emanations from the sewer line constituted an unconstitutional taking of their property.

The two cases were consolidated for trial and on May 2, 1990, after three days of trial, the jury returned a verdict finding the City had unconstitutionally taken appellees property, damaging them by $260,000. The trial court awarded prejudgment interest at the rate of 7.5% from February 13, 1987, the date suit was filed by appellees.

The City's first assignment of error concerns the jury instructions. The following instructions by the City were refused by the trial court:

> In order to prevail on their inverse condemnation claim against the City of Fayetteville, the Stanberrys must prove by a preponderance of the evidence that:
>
> (1) The discharge of raw sewage from the Fayetteville sewer system was the proximate cause of a continuing trespass or nuisance which resulted in permanent damage to the Stanberry property, or
>
> (2) Sewage odors from the Fayetteville sewer system caused the Stanberrys to suffer a direct, substantial injury, peculiar to them, and not suffered by the general public which has resulted in permanent damage to the Stanberry property.

If you find that the Stanberrys should prevail on their inverse condemnation claim, the measure of damages to which they are entitled is the difference between the fair market value of their property before and after the permanent damage.

Do you find from a preponderance of the evidence that the Stanberry property has been permanently damaged by raw sewage or sewage odors from the Fayetteville sewer system?

If your answer to Interrogatory Number 2 is 'yes', when did it become, or when should it have become, obvious to the Stanberrys, that the damage was permanent?

If your answer to Interrogatory Number 2 is 'yes', what do you find is the difference between the fair market value of the Stanberry property before and after the permanent damage?"

The following instructions were given:

In the inverse condemnation case filed by Earnest and Carol Stanberry against the City of Fayetteville, the Stanberrys have the burden of proving that their lands have been inversely condemned by the City of Fayetteville. They therefore have the burden of proving the following three essential propositions:

First, that the City of Fayetteville committed a continuing trespass or a continuing nuisance over a long period of time upon their lands which amounted to a taking of their property; and

Second, that such continuing trespass or continuing nuisance proximately caused a reduction in the value of the Stanberrys' property; and,

Third, the amount of just compensation for the taking.

Do you find from a preponderance of the evidence that the Stanberrys have proven that their land has been inversely condemned by the City of Fayetteville in their inverse condemnation case?

If you answered Interrogatory Number 2, 'yes', what do

you find to be the just compensation proven by Earnest and Carol Stanberry for the inverse condemnation of their land?

You are instructed that a taking occurs when there is a serious interruption of the common and necessary use of the property as to interfere with the rights of the owner.

It is apparent the City sought to accomplish two things by the proffered instruction—to lay the factual foundation for a statute of limitations defense, which we will address in a moment, and to establish that permanent damage is a prerequisite of continuing trespass or nuisance for a taking to occur, as opposed to a "serious interruption of the common and necessary use of the property as to interfere with the rights of the owner," which was the standard in the trial court's instruction. Thus, the City maintains, as it did before the trial court, that permanent damage is a necessary predicate for inverse condemnation. We disagree.

While it is true there must be some measure of substantiality for an injury to constitute a taking, we are not aware of, nor has appellant cited, any authority embracing *permanency* as an essential element of proof in inverse condemnation. *See* e.g., 26 Am. Jur. 2d *Eminent Domain* § 157, *What Constitutes a Taking* (and cases cited therein) (1966 and Supp. 1990). (Where a taking is alternatively described as damage that: will substantially oust the owner and deprive him of all beneficial enjoyment thereof; will substantially abridge the owner's rights to such an extent as to deprive him of his right; will be an interference with or disturbance of property rights resulting in injuries which are not merely consequential or incidental; and is determined by the character of the invasion and not by the amount of damage resulting from it, as long as the damage is substantial).

The United States Supreme Court in *First English Evangelical Lutheran Church* v. *County of Los Angeles*, 482 U.S. 304 (1987), recently held that "temporary" takings which deny landowners all use of their property are not different in kind from permanent takings. The Court noted, quoting from the dissent in *San Diego Gas & Electric Co.*, 450 U.S. 659 (1981), that "[n]othing in the Just Compensation Clause suggests that 'takings' must be permanent or irrevocable."

■ In a recent discussion of inverse condemnation in a similar context, this court stated that a taking occurs when a condemnor acts in a manner which substantially diminishes the value of a landowner's land, making no reference to permanency. We also stated that "a continuing trespass or nuisance could ripen into inverse condemnation," suggesting flexibility in the definition of taking. *Robinson* v. *City of Ashdown*, 301 Ark. 226, 230, 783 S.W.2d 53, 55 (1990). Here the trial court used a definition taken from *Shellnut* v. *Arkansas State Game & Fish Commission*, 222 Ark. 25, 258 S.W.2d 570 (1953), which was borrowed from *Pumpelly* v. *Green Bay Co.*, 13 Wall. (80 U.S.) 166 (1871), both "taking" cases.

In contrast, the City's proffered instruction was not sanctioned by AMI, nor has the City provided other authority to sustain its own instruction or to discredit the court's instruction. The City does cite *City of Springdale* v. *Weathers*, 241 Ark. 772, 410 S.W.2d 754 (1978), but that is of little help. *Weathers* was not an inverse condemnation suit and discussed only the issue of the statute of limitations for nuisance or negligence. The opinion does not address or discuss the elements of proof for an inverse condemnation suit.

■ The trial court in this case stated it was not required by law to give appellant's instruction and the instruction could be confusing. The trial court was correct. When instructions are requested which do not conform to the Arkansas Model Jury Instructions (AMI) they should be given only when the trial judge finds the AMI instructions do not contain an essential instruction or do not accurately state the law applicable to the case. *Newman* v. *Crawford Constr. Co.*, 303 Ark. 641, 799 S.W.2d 531 (1990). And if an instruction is offered by a party the trial court is not required to give it if the instruction needs explanation, modification or qualification. *Pineview Farms Inc.* v. *Smith Harvestore, Inc.*, 298 Ark. 78, 765 S.W.2d 924 (1989). Where a party requests an erroneous instruction, he may not complain of failure to charge on the subject. *Williams* v. *First Security Bank of Searcy*, 293 Ark. 388, 738 S.W.2d 99 (1987).

While we need not provide a definitive statement of what constitutes a taking, we will say it does not require permanency nor an irrevocable injury, as urged by the City. *See First English*

*Evangelical Lutheran Church* v. *County of Los Angeles, supra.* The trial court was correct.

The City's instruction, as noted previously, also implicated the statute of limitations by asking 1) if the jury found the property had been permanently damaged, and 2) if so, when was it obvious the damage was permanent. The trial court refused these interrogatories also, and the City argues it was thereby deprived of its statute of limitations defense. Again, we disagree.

■ As we have seen, permanency was not required and, for the same reasons, permanency was not a necessary predicate for a statute of limitations defense. Nor do we agree that the City was deprived of a statute of limitations defense. The trial court refused only the limitation instruction based on permanency. Nothing prevented the City from requesting a statute of limitation instruction based on the instructions that were given. Moreover, the City has not demonstrated prejudice, as it does not argue that the statute of limitations would have in fact barred appellees' claim due to lack of permanent damage or due to a running of the limitation period after permanent damage had occurred.

■ The City also challenges the trial court's award of prejudgment interest. The City notes the general rule that prejudgment interest is not recoverable where the amount and time of the injury are not susceptible of exact determination. *City of Morrow* v. *Cline-Frazier, Inc.*, 26 Ark. App. 138, 761 S.W.2d 615 (1988); *Berkely Pump Co.* v. *Reed-Joseph Land Co.*, 279 Ark. 384, 653 S.W.2d 128 (1983). In *Berkely Pump*, in a similar fact situation where crops were damaged over a period of time, prejudgment interest was denied.

The appellees concede that under the traditional rule prejudgment interest would be inappropriate in this case. But, they argue, the overruling consideration of the constitutional dictates of art. 2, § 22, require that "just compensation" be awarded and the only way compensation can be "just" in this case is for the appellees to be made whole by way of prejudgment interest. We do not find that argument persuasive.

■■ The test for an award of prejudgment interest is whether a method exists for fixing an exact value on the cause of

action at the time of the event which gives rise to the cause of action. *Hopper* v. *Denham*, 281 Ark. 84, 661 S.W.2d 379 (1983). Where the damages cannot be ascertained at the time of the loss, interest before judgment should not be allowed. *Lovell* v. *Marianna Fed. S & L Ass'n*, 267 Ark. 164, 589 S.W.2d 577 (1979). The amount to be paid by the City of Fayetteville depended upon the proof regarding not only the value of the landowners' property on the date of taking, but also upon how long the temporary taking was effective.[1] Thus, the case differs from *Ark. State Highway Comm'n* v. *Stupenti*, 222 Ark. 9, 257 S.W.2d 37 (1953), which required only a determination of the damages or value of the landowners' property as of the date of the taking.

Affirmed as modified.

NEWBERN, J., not participating.

---

[1] Other than prejudgment interest, no issue was raised concerning the proper measure of damages.