PINEVIEW FARMS, INC. *v.* A.O. SMITH
HARVESTORE, INC.

88-205                                    765 S.W.2d 924

Supreme Court of Arkansas
Opinion delivered February 27, 1989

*Daggett, Van Dover, Donovan & Cahoon,* by: *Robert J. Donovan,* for appellant.

*Allen Law Firm, A Professional Corporation,* by: *H. William Allen* and *Sandra Jackson,* for appellee A.O. Smith Harvestore, Inc.

*Anderson & Kilpatrick,* by: *Joseph E. Kilpatrick, Jr.,* and *Frances E. Scroggins,* for appellees Southern Harvestore Systems, Inc., Gerald King, and Joe McMullen.

JACK HOLT, JR., Chief Justice. Appellant Pineview Farms, Inc. (Pineview) claims appellees A. O. Smith Harvestore, Inc. (A. O. Smith), Southern Harvestore Systems (Southern), which is a subsidiary of A. O. Smith, and Gerald King and Joe McMullen, two servicemen of Southern, were negligent in failing to properly inspect and repair Pineview's grain silo. The trial court entered judgment in favor of the appellees. We affirm.

In July 1980 Pineview, located in Cabot, Arkansas, employed Southern, located in Harrison, Arkansas, to inspect and repair its Harvestore silo. The Harvestore silo system preserves

feed by limiting oxygen that comes into contact with feed stored inside a silo. Breather bags allow temperature changes in the system to occur without affecting the vaccum. The estimate for the job was $7,500.00, which included resealing the silo, replacing the breather bags, and putting a new floor in the silo.

On July 18, 1980, employees of Southern partially resealed the silo. However, they did not replace the breather bags or the floor because they felt both were "okay." The charge for this work was $1,127.00. The silo was placed in use, and silage began spoiling shortly thereafter.

On October 27, 1981, Southern sent two servicemen to Pineview Farms in response to a call that the silo was on fire. Upon arrival, the servicemen found no evidence of fire but did find the unloader door open. They changed a valve, clamped down a top hatch, and checked the breather bags, which appeared to be in good condition. The charge for this service was $63.86.

On May 7, 1982, Southern replaced a cutter chain and hooks and conducted a pressure test. The charge was $2,412.13.

On July 13, 1982, two Southern servicemen (appellees King and McMullen) were sent to pressure check the silo and examine its foundation. They did a partial pressure check on the lower portion of the structure, replaced a bottom drain cap missing from the foundation, and fixed a faulty center hatch gasket. They also tested the breather bags, finding them to be in good condition. The charge was $141.33.

Pineview dumped spoiled silage into its fields in July or August of 1982. In November 1982 Pineview again put grain in the silo. Near this time, Robert Gordon, a representative from A. O. Smith, visited Pineview Farms. He inspected the breather bags and determined that the bags were old and "with fairly good accuracy" inoperable. However, he did not report this to Pineview, A. O. Smith, or Southern.

From November 1982 until February 1983, the silage deteriorated rapidly. Pineview called A. O. Smith in Chicago to discuss the problem. On February 9, 1983, Smith sent representatives from K-W Harvestore in Missouri to Pineview. The repairmen found four leaks in the silo and also found that the breather bags were bad. The repairmen fixed the leaks and replaced the

breather bags and breather valve flaps. Pineview was not charged for this work.

In April of 1983, A. O. Smith's representative, Bob Gordon, met with Dr. Clinton Jewett, the manager of Pineview, concerning a delinquent account to Southern. In an interoffice memo concerning this visit, Gordon stated that (1) he questioned the credibility of the work performed by Southern on July 13, 1982, in that he and K-W Harvestore people found the breather bags to be very brittle and inoperative seven months later; that (2) he agreed to give Pineview $141.33 credit on the July 13, 1982, invoice; and that (3) he agreed to give Pineview a $440.32 credit on the July 18, 1980, invoice since Pineview paid for a complete reseal but only received a partial reseal.

In May of 1983, Pineview put another crop of grain in the silo. In about a month, some of the silage spoiled. On July 15, Pineview filed a complaint against A. O. Smith Harvestore, Southern Harvestore, Gerald King and Joe McMullen, alleging that from July 18, 1980, until July 15, 1983, A. O. Smith, through its agents (Southern, King, and McMullen) was negligent in failing to inspect and repair the silo and breather bags, resulting in damage to silage and livestock and loss of milk production in excess of $10,000.00

The case was tried before a jury, which found that (1) Southern Harvestore, Joe McMullen, and Gerald King were not negligent and that (2) Pineview's negligence was the proximate cause of the occurrence. The trial court entered judgment for A. O. Smith, Southern, King, and McMullen. Thereafter, Pineview filed a motion for new trial, which the trial court denied. From this order, Pineview appeals.

### AMENDMENT OF PLEADINGS.

Pineview argues that the trial court erred in (1) denying its motion to amend the pleadings to conform to the evidence and in (2) failing to submit the issue of the independent negligence of A. O. Smith Harvestore to the jury. We hold to the contrary.

In a deposition taken seven months prior to trial, Bob Gordon, A. O. Smith's representative, testified that he inspected the breather bags in November of 1982 and determined that they were old and "with fairly good accuracy" inoperable, but did not

disclose this fact to anyone.

Three months prior to trial, A. O. Smith filed a motion for summary judgment asking that it be dismissed from the case. In its response to this motion, Pineview asserted that Bob Gordon's inspection of the breather bags "constitutes independent inspection of the Harvestore silo by an agent of A. O. Smith Harvestore" and, "[c]onsequently, there is substantial evidence from which the jury could conclude that A. O. Smith Harvestore is guilty of an act of independent negligence."

Well into the trial, Pineview moved that the pleadings be amended to allege independent negligence on the part of A. O. Smith Harvestore to conform to the proof that Bob Gordon inspected the breather bags in 1982 and found them to be old but did not disclose this fact to anyone even though he thought they should have been replaced. The following exchange then took place:

> The Court: Somewhat in my mind, I thought that motion wasn't necessary anymore.
>
> Mr. Donovan (counsel for Pineview): Whether it is or not, Your Honor, I'd like to make it. And the allegation further is that Bob Gordon is the agent and employee of A. O. Smith Harvestore.
>
> . . .
>
> Mr. Allen: May I be heard on that, Your Honor?
>
> The Court: Yes.
>
> Mr. Allen (defense counsel): Your Honor, I offer Defendant's Exhibit 25 and Defendant's Exhibit 26, the pretrial information sheet and the supplemental pretrial information sheet filed by the Plaintiff in this case, which says, "This is a claim for negligent inspection and repair of a Harvestore silo and the resulting damage to livestock and loss of milk production as a consequence of the negligence," and the supplemental includes what each witness would testify to, and there's no testimony in there to anything other than negligent inspection or repair of the Harvestore silo.

The Court: What is he trying to make it conform to anyway?

Mr. Allen: He is trying to say now independent — independent liability on Harvestore, a claim that's never been in this case, and we move for a continuance because we didn't prepare for an independent liability case. We prepared for an agency case, and that's what he's been.

The Court: Well, I think the rule is that if the motion is objected to, it's denied anyway, as I remember the rule from ten years ago. I'm not sure the motion is good anyway, right now. But anyway, it is denied at this late date.

This motion was renewed at the conclusion of the proof and denied again by the trial court. In addition, Pineview objected to the court's failure to submit the question of A. O. Smith's independent negligence to the jury.

Ark. R. Civ. P. 15 provides as follows:

(b) *Amendments to Conform to the Evidence.* When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended in its discretion. The court may allow a continuance to enable the objecting party to meet such evidence.

■■ A party who knowingly acquiesces in the introduction of evidence relating to issues that are beyond the pleadings is in no position to contest a motion to conform. *Bailey* v. *Matthews*, 279 Ark. 117, 649 S.W.2d 175 (1985). Newbern, *Arkansas Civil Practice and Procedure* § 15-3 (1985). Thus, consent is generally found when evidence is introduced without objection. *Id.* However, "a court will not imply consent merely because evidence relevant to a properly pleaded issue incidentally tends to establish an unpleaded claim." *Quillen* v. *International Playtex, Inc.*, 789

F.2d 1041 (4th Cir. 1986).

It is undisputed that the appellees did not expressly consent to litigating the issue of A. O. Smith's liability, as principal, for agent Bob Gordon's negligence in failing to inform anyone after finding the breather bags to be old and inoperable in November of 1982. Thus, our only concern is whether the appellees impliedly consented to the trial of this issue. We quickly find they did not.

Granted, appellees did not object to testimony concerning this issue at Bob Gordon's deposition seven months prior to trial or at trial. Notwithstanding, since Gordon's testimony was relevant to the negligence of Southern and its employees in failing properly to inspect and repair the silo, a pleaded issue, the appellees were not put on notice of the unpleaded issue by this testimony sufficient to establish implied consent.

In addition, we are not persuaded by Pineview's contention that the appellees were put on notice of this issue by Pineview's argument in its response to the appellees' motion for summary judgment. Pineview's brief is devoid of language indicating that it was alleging negligence by Gordon in failing to inform. Pineview merely alleged Bob Gordon's inspection of the breather bags "constitutes independent inspection of the Harvestore silo by an agent of A. O. Smith Harvestore" and, "[c]onsequently, there is substantial evidence from which the jury could conclude that A. O. Smith Harvestore is guilty of an act of independent negligence."

Surely, had Pineview intended to make Gordon's negligence an issue prior to trial, it would have moved to amend its pleadings. Pineview's supplemental pre-trial information sheet indicating the expected testimony of Bob Gordon reveals its intentions were to the contrary. The sheet merely states that Gordon would testify that the Southern workmen did not perform the work indicated by the invoice and that he found the breather bags to be defective. However, it does not state that Gordon would testify that he failed to inform anyone that the bags were old or inoperable.

■■ Absent express or implied consent, the question of whether pleadings may be amended to conform to the evidence is within the sound discretion of the trial court. *See* Ark. R. Civ. P. 15(b). A party should be allowed to amend absent prejudice.

*Webb* v. *Workers' Compensation Comm'n*, 286 Ark. 399, 692 S.W.2d 233 (1985). An important consideration in determining prejudice is whether the party opposing the motion will have a fair opportunity to defend after the amendment. *T. H. Epperson, Inc.* v. *Robinson*, 274 Ark. 142, 622 S.W.2d 688 (1981).

Some of the trial court's language in denying Pineview's motion to amend was nebulous. However, in light of (1) the statement by appellees' counsel in response to Pineview's motion to amend that he had not prepared for an independent liability case and (2) the trial court's ruling immediately thereafter stating that it was denying the motion at "this late date," it is obvious that the court's holding was essentially based upon prejudice to appellees which would have resulted from amendment of the pleadings.

This ruling is well founded. The appellees appeared in court prepared to try only a negligent repair and inspection action. If the trial court had allowed Pineview to amend its pleadings late in trial with a new unpleaded claim based upon the negligence of Bob Gordon in failing to inform anyone of the condition of the breather bags, the appellees would have been faced with the task of defending a matter significantly different from that for which they originally prepared. We conclude that the trial court did not abuse its discretion in denying Pineview's motion to amend or in failing to submit the issue of the independent negligence of A. O. Smith Harvestore to the jury.

### JURY MISCONDUCT.

Pineview contends that the trial court abused its discretion by denying Pineview's motion for new trial on grounds of jury misconduct. We disagree.

During voir dire, the following took place:

The Court: Do we have any dairy farmers? Are you a dairy farmer?

Juror Mrs. Bennie Hicks: Yes, I am.

The Court: Okay. Would you identify yourself, please, ma'am?

Mrs. Hicks: I'm Mrs. Bennie Hicks, and we own a dairy

farm in the Oak Grove Community.

Mr. Donovan (Pineview's counsel): Are any of you engaged in the farm equipment or supply business?

Jurors: (no response)

. . .

Mr. Donovan: Are you familiar with Pineview Farms?

Mrs. Hicks: Yes, I am.

Mr. Donovan: Okay. Are you the lady that told us you're in the dairy business?

Mrs. Hicks: Right.

. . .

Mr. Donovan: Have any of you ever worked with any silage — with silage in any way? Or a feed company?

Mrs. Hicks: (raises hand)

. . .

Mr. Donovan: Could you be fair to Pineview Farms?

Mrs. Hicks: Yes.

. . .

Mr. Allen (defense counsel): Mrs. Hicks, you're kind of in a unique position here. You're the only one that's mentioned being involved in dairy farming. Could you tell us a little about your farm and how long you have been involved in it and how many cows? Just tell us a little about your farm.

Mrs. Hicks: We've been dairying for six years tomorrow. We are located in the Oak Grove community, which is about nine miles northeast of here. Presently, we're running about sixty cows. My husband and I own it and operate it ourselves.

After trial, Pineview moved for a new trial based in part on jury misconduct. It attached affidavits indicating that (1) Bennie Hicks, Mrs. Hicks' husband, while doing some custom tractor

work for Pineview, became very upset when Pineview refused to repair his broken tractor and left without completing the job; that (2) Pineview bought silage from Hicks in May of 1981, the same silage for which Pineview claimed damages; and that (3) Mrs. Hicks endorsed the check given to her husband by Pineview for this silage.

After a hearing, the trial court denied the motion for new trial, finding that there was no direct proof that Hicks did anything wrong or committed fraud.

■■ No verdict shall be void or voidable because any juror shall fail to possess the necessary qualifications unless the juror knowingly answers falsely or knowingly fails to respond to any question on voir dire relating to the qualifications propounded by the court or counsel in any cause. Ark. Code Ann. § 16-31-107 (1987). To obtain a new trial on the grounds of juror misconduct, a party must first demonstrate that a juror failed to honestly answer a question or deliberately concealed a matter during voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause. *See McDonough Power Equipment, Inc.* v. *Greenwood*, 464 U.S. 548 (1984). *See also B. & J. Byers Trucking, Inc.* v. *Robinson*, 281 Ark. 442, 665 S.W.2d 258 (1984); *Hot Springs Street Railway Co.* v. *Adams*, 216 Ark. 506, 226 S.W.2d 354 (1950). The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial. *McDonough, supra.*

■■ In a hearing on a motion for a new trial because of ineligibility of a juror, the complaining party has the burden of first establishing that (1) diligence was used to ascertain the desired information and that (2) he made known to the juror the specific information desired. *Lemley* v. *Fricks*, 251 Ark. 923, 475 S.W.2d 702 (1972); *Kane* v. *Erick*, 250 Ark. 448, 465 S.W.2d 327 (1971). *See also Ark. State Highway Comm'n* v. *Kennedy*, 233 Ark. 844, 349 S.W.2d 133 (1961). We affirm where there is substantial evidence to support a trial court's finding on whether a party has met its burden. *Lemley, supra.*

■ First, there was absolutely no evidence introduced at the hearing on the motion for a new trial that Mrs. Hicks failed to honestly answer a question or deliberately concealed any matter.

Secondly, Pineview has not met its burden of showing that it used due diligence to obtain the desired information and that it made known to Mrs. Hicks the specific information desired. In short, Pineview's argument is meritless.

## SUFFICIENCY OF THE EVIDENCE.

Pineview asserts that the trial court erred in failing to grant its motion for new trial in that there was insufficient evidence to support the jury verdict.

When acting upon a motion for new trial challenging a jury's verdict, the trial court is required by Ark. R. Civ. P. 59(a)(6) to set aside the verdict if it is clearly against the preponderance of the evidence or contrary to law. *Dedman v. Porch*, 293 Ark. 571, 739 S.W.2d 685 (1987). The test on review, where the motion is denied, is whether the verdict is supported by substantial evidence. *Schaeffer v. McGhee*, 286 Ark. 113, 689 S.W.2d 537 (1985). It is only where there is no reasonable probability that the incident occurred according to the version of the prevailing party or where fair-minded men can only draw a contrary conclusion that a jury verdict should be disturbed. *Blissett v. Frisby*, 249 Ark. 235, 458 S.W.2d 735 (1970).

It is Pineview's contention that the trial court abused its discretion in failing to grant a new trial since there was overwhelming proof that the silo was improperly inspected and repaired by employees of Southern on several occasions.

Notwithstanding testimony concerning negligence on the part of the employees of Southern, the jury concluded that Southern was not negligent, apparently accepting the employees' testimony that they performed their services properly. Also, the jury could have reasonably concluded that it was Pineview's negligence that caused the damage to the feed and livestock and loss of milk production in light of testimony that (1) upon arrival at the Pineview Farms, servicemen found the door to the silo open and that (2) on one occasion the men found a drain cap missing. The verdict is supported by substantial evidence.

Pineview's argument is essentially an attack on the credibility of appellees' witnesses. The weight and value to be given to the testimony of witnesses is in the exclusive province of the jury. *Butler Mfg. Co. v. Hughes*, 292 Ark. 198, 729 S.W.2d

142 (1987).

### JURY INSTRUCTIONS.

The jury was instructed on negligence (AMI 301), the standard of care (AMI 305), proximate cause (AMI 501), affirmative defenses (AMI 206), and damages (AMI 2206, 2221, and 2226). Pineview argues that the trial court erred in refusing to give the jury the following additional instruction on these matters:

> The defendants allege poor management practices. Poor management practices of Pineview Farms, Inc., if any, are not to be considered as contributory negligence in comparing fault, unless related to defendants' negligence, if any. However, you may consider management practices of Pineview Farms, Inc., in determining the amount of damages caused by defendants' negligence, if any.

This argument is meritless.

Where a party is entitled to an instruction on an issue but requests an erroneous or incomplete instruction, he may not complain of failure of the court to charge the jury on the subject. *See Williams* v. *First Security Bank of Searcy*, 293 Ark. 388, 738 S.W.2d 99 (1987). *See also Reynolds* v. *Ashabranner*, 212 Ark. 718, 207 S.W.2d 304 (1948). A trial court need not give an instruction which needs explanation, modification, or qualification. *Williams, supra.* A jury instruction must be simple, impartial, and free from argument. *Paul* v. *Safley Construction Co.,* 287 Ark. 412, 700 S.W.2d 55 (1985). A litigant is not entitled to his particular preference in the wording of instructions, and a trial judge is not required to give repetitious or redundant instructions. *Hopper* v. *Denham*, 281 Ark. 84, 661 S.W.2d 379 (1983).

The matters embraced by Pineview's instruction are adequately covered by the instructions given to the jury. In addition, the proffered instruction is erroneous on its face in that it commingles comparative and contributory negligence principles.

Affirmed.