Jackie L. BERRY, Administrator of the Estate of Toni Berry, Deceased *v.* ST. PAUL FIRE and MARINE INSURANCE COMPANY

96-197                                                              944 S.W.2d 838

Supreme Court of Arkansas
Opinion delivered May 19, 1997

*Boswell, Tucker, Brewster & Hicks*, by: *Ted Boswell* and *John T. Holleman*, for appellant.

*Friday, Eldredge & Clark*, by: *Laura Hensley Smith, Gregory D. Taylor*, and *Will Bond*, for appellee.

DONALD L. CORBIN, Justice. Appellant Jackie L. Berry, Administrator of the Estate of Toni Berry, appeals the judgment of the Saline County Circuit Court implementing the jury's verdict in favor of Appellee St. Paul Fire and Marine Insurance Company in Appellant's medical negligence suit. Our jurisdiction is pursuant to Ark. Sup. Ct. R. 1-2(a)(15) (as amended by *per curiam* July 15, 1996). Appellant raises seven points for reversal, while Appellee raises one point on cross-appeal. We find no error and affirm.

Appellant, as the plaintiff in the medical-negligence action below, filed suit against Appellee, insurer for Saline Memorial Hospital, alleging that the hospital's nursing staff was negligent in its care of the decedent, Toni Berry, ultimately resulting in her death. The decedent was brought to the emergency room at Saline Memorial Hospital on July 25, 1992, complaining of abdominal pain. The decedent was diagnosed with acute vascular embarrassment and was immediately taken to surgery. During surgery, it was discovered that one of the decedent's intestines had slipped through a tear in her abdominal cavity. The surgeon removed the intestine from the tear and untwisted the knotted intestine. The decedent was then sent to the surgical recovery room in good condition. Unfortunately, on July 26, 1992, a few hours after surgery, the decedent died.

Appellant alleged in his complaint that the hospital was negligent in failing to adequately staff its facility and properly train and supervise its nursing staff. Appellant also alleged that the hospital's nursing staff was negligent in failing to follow the hospital's written policies in caring for someone in the decedent's condition, in failing to properly chart the decedent's vital signs, and in failing to properly care for, supervise, and monitor the decedent. Trial in this matter commenced on May 8, 1995, and ended on May 19, 1995, with the jury finding in favor of Appellee. Appellant subsequently filed a motion for new trial, citing the same points for reversal that he cites on appeal, but the trial court denied the motion.

### Juror Misconduct

For his first point for reversal, Appellant argues that the trial court should have granted his motion for new trial on the ground that Gary Nichols, foreperson of the jury, was employed by Stephens, Inc., at the time of the trial, and that Stephens, Inc., was involved in a $21 million bond issue for Appellee's insured, Saline Memorial Hospital. In an affidavit filed below, Appellant's counsel, Mr. Boswell, stated that sometime after the trial had concluded on May 19, 1995, he read a newspaper article dated Wednesday, May 10, 1995, describing the involvement of Stephens, Inc., in a bond-refinancing project for the hospital. Appel-

lant's counsel explained that he had allowed his newspapers to accumulate and he was thus unaware of the bond project until after the trial had ended. The allegation of misconduct stems from Nichols's failure to answer affirmatively to the following inquiry made by Appellant's counsel during *voir dire*:

> Do any of you, as you come here today, have any employment or contractual relationship with Saline Memorial Hospital? Now that would include — or have you ever? Let me add that. That would include if you're a vendor, if you have a contract relationship with them, if you've ever worked with them, or if you had any connection with them that is a business connection or a working relationship. And I would ask that that question be expanded to include, to your knowledge, any member of your immediate family.

Appellant contends that the failure of Nichols to admit to this business connection during *voir dire* is tantamount to juror misconduct. Appellant contends further that this misconduct is more readily apparent considering the trial judge's remark, in jest, to Nichols that the judge was in trouble with his neighbor, who also worked for Stephens, Inc., for keeping Nichols out of work for so long.

During the hearing on the motion for new trial, Appellant attempted to question Nichols regarding his employment with Stephens, Inc., and his knowledge, if any, of the business relationship between his employer and the hospital. The trial court refused to allow that type of inquiry pursuant to A.R.E. Rule 606. Upon reading the transcript containing the foregoing questions posed by Appellant's counsel, the trial court ruled:

> The question that I read would not trigger in, I think a lay person's mind, any response other than does he or she have a relationship. Any business relationship was clear from the jurors' questionnaire. It could have been delved into in any sort of detail that any counsel thought necessary. But I do not believe the juror responded untruthfully, or in any devious manner by not responding to that question. I do not believe that it was triggered in his or other's [sic] minds a positive response based on his mere employment by Stephens, Inc.

No verdict shall be void or voidable because any juror shall fail to possess the necessary qualifications unless the juror knowingly answers falsely or knowingly fails to respond to any question on *voir dire* relating to the qualifications propounded by the court or counsel in any cause. *Pineview Farms, Inc. v. Smith Harvestore, Inc.*, 298 Ark. 78, 765 S.W.2d 924 (1989) (citing Ark. Code Ann. § 16-31-107 (1987)). The moving party bears the burden of proving that a reasonable possibility of prejudice resulted from the alleged juror misconduct. *Griffin v. Woodall*, 319 Ark. 383, 892 S.W.2d 451 (1995). Prejudice is not presumed and we will not reverse the trial court's denial of a request for new trial on such grounds absent a manifest abuse of the trial court's discretion. *Id.*

In *Pineview Farms, Inc.*, 298 Ark. 78, 765 S.W.2d 924, Pineview requested a new trial due to a juror's failure to disclose during *voir dire* her husband's previous business relationship with Pineview, which ended with the juror's husband being very upset with Pineview. This court held that in order to warrant the granting of a new trial on the grounds of juror misconduct, a party must first demonstrate that a juror failed to honestly answer a question or deliberately concealed a matter during *voir dire*, and must then further show that a correct response would have provided a valid basis for a challenge for cause. *Id.* Additionally, the complaining party has the burden of establishing that (1) diligence was used to ascertain the desired information and that (2) he made known to the juror the specific information desired. *Id.* We will affirm where there is substantial evidence to support a trial court's finding as to whether a party has met its burden. *Id.*

In the present case, the series of questions posed to the jurors concerning any relationship that they, or their immediate family members, may have had with the hospital was confusing at best. We cannot say that from those questions a reasonable juror would have understood that Appellant's counsel was also seeking information as to any relationship his or her *employer* may have had with the hospital. As such, Appellant did not use due diligence in seeking out the information concerning Nichols's employer's relationship to the hospital or Nichols's position with his employer, nor did he make clear to the potential jurors what particular infor-

mation he was seeking. Furthermore, Appellant has not shown that a correct response from Nichols would have necessarily warranted his removal for cause, even if there had been any evidence presented, which counsel for Appellant has conceded there was not, showing that Nichols was employed in a "prominent management position," as Appellant argues. Under such circumstances, the trial court did not abuse its discretion in denying the motion for new trial.

### Health Department Letters

For his second point for reversal, Appellant argues that he was prejudiced by the trial court's refusal to allow him to present letters from the Arkansas Department of Health to Saline Memorial Hospital, in which the Department listed certain deficiencies in the hospital's operation found during surveys conducted on May 19 and 20, 1988, May 2, 1990, May 27, 1992, and November 10, 1992. Appellant argues that the documents were relevant to the issue of the nurses' negligence and that they were admissible pursuant to AMI Civ. 3d 601 as evidence of violation of an ordinance or statute. Appellee contends that the survey letters were not relevant to the issue of the nurses' care of the decedent on July 25 and 26, 1992. Appellee argues further that there is no merit to Appellant's claim of prejudice because the trial court indicated that it would allow the evidence if Appellant laid the proper foundation for their admission during trial.

The May 1988 survey indicated nursing deficiencies concerning lack of documentation of bedtime nourishment for patients receiving diabetic diets, inadequate floor coverage by registered nurses, and failures to initiate nursing care plans on each patient within twenty-four hours and updating those care plans every twenty-four hours. The May 1990 survey indicated nursing deficiencies in the same three areas previously found in the May 1988 survey, as well as those concerning documentation of patients in restraints, patient discharge planning, improper labeling of expiration dates on pharmaceutical drugs, and failure to properly check "crash charts." The May 1992 survey noted several nursing deficiencies including a lack of documentation of the revision or update of the nursing care plan to reflect the current status

of the patient, insufficient documentation as to patient observation by registered nurses on each shift, and lack of consistent documentation concerning bedtime nourishment to patients on therapeutic diets. The follow-up survey of November 1992 indicated that the documentation deficiencies concerning patient observation by registered nurses and revision of the nursing care plans had not been corrected.

Appellee filed a motion in limine to prohibit introduction of the letters. Appellee argued that the surveys were irrelevant to Appellant's claim of negligence in that none of the deficiencies pertained to the quality of care received by the decedent, that the first two surveys were too remote in time, and that the vast majority of the surveys had no relation to any deficiencies of the nursing staff on the fourth floor, where the decedent was hospitalized. Appellee contended that Appellant's own expert witness acknowledged that a care plan for the decedent was initiated within twenty-four hours, and that it was undisputed by Appellee that the plan was not updated because the decedent died before twenty-four hours had expired. Appellee also argued that the fact that the Department may have found certain deviations or violations of its rules and regulations is not evidence of the nurses' negligence in this case.

A hearing was conducted on the motion prior to trial, during which the trial court examined the letters individually for relevance. After hearing lengthy argument from both sides as to each pertinent point noted on each letter, the trial court granted the motion in limine on the grounds that the survey letters were irrelevant to the issue of the type of care the decedent received from the hospital's nurses during July 1992. The trial court did, however, indicate that should the documents become relevant at some point during the testimony or should Appellant succeed in laying a foundation indicating that these particular deficiencies contributed to the decedent's death, the letters could be admitted.

We find no error in the trial court's ruling that the documents were not relevant to the issue of whether the hospital's nursing staff was negligent in the care of the decedent, especially given that the court indicated a willingness to allow such evidence

should Appellant be able to demonstrate their relevance as the testimony was developed. Appellant never attempted to gain the admission of the survey letters at any later point in the trial; rather, Appellant merely made a proffer of the documents before any testimony had been taken. We will not reverse a trial court's ruling on the relevancy of evidence absent an abuse of discretion. *Thompson v. Perkins*, 322 Ark. 720, 911 S.W.2d 582 (1995). Appellant has failed to demonstrate such an abuse of discretion.

### Improper Conduct by the Trial Court

For his third point for reversal, Appellant argues that the jury was prejudiced against his case due to the trial court's improper and stern rebuke of his counsel. Appellant argues further that the trial court acted improperly by accepting a gift from the jury.

During the trial, while one of Appellant's counsel, Mr. Holleman, was examining a witness, Appellee's counsel, Ms. Smith, objected. The trial court then instructed Mr. Holleman to ask his question in a hypothetical context. Mr. Holleman continued with his questioning when Ms. Smith again objected. The trial court sustained the objection. At that point, the following exchange took place between the trial court and Appellant's other counsel, Mr. Boswell:

MR. BOSWELL:    May I approach the bench, Your Honor?
THE COURT:    No, sir.
MR. BOSWELL:    Sir?
THE COURT:    No. You may ask it in a hypothetical.
MR. BOSWELL:    Plaintiff's [sic] move for a mistrial.
THE COURT:    Denied.

Mr. Holleman then continued his questioning of the witness.

Appellee denies that the trial court's remarks amounted to a rebuke of Appellant's counsel. Appellee maintains that the trial court had been patient with counsel for both sides and that the particular exchange of words cited by Appellant had been preceded by approximately fifty bench conferences, conducted at the requests of both parties.

■ Remarks of a trial court do not amount to prejudicial error unless they constitute an "unmerited rebuke" giving the jury the impression that defense counsel is being ridiculed. *Rogers v. State,* 257 Ark. 144, 515 S.W.2d 79 (1974), *cert. denied,* 421 U.S. 930 (1975). There is no prejudice where the record reveals that the trial judge was merely irritated at defense counsel's trial tactics. *Id.; see also Echols v. State,* 326 Ark. 917, 936 S.W.2d 509 (1996).

■ From our reading of the foregoing exchange of words, it is not evident that the trial court's remarks amounted to an unmerited rebuke of Appellant's counsel. Moreover, it does not appear from the trial court's remarks that the court was even irritated with counsel. It is the trial court's duty to maintain order and proper decorum in the courtroom, which includes the ability to control the flow of the examination of witnesses and the presentation of evidence. *See* Rules of Professional Conduct Canon 3(B)(3); A.R.E. Rule 611. We thus conclude that the trial court's conduct was not at all improper, let alone rising to the level of the serious allegation of judicial misconduct.

Appellant's next contention of misconduct involves the judge and some members of his staff receiving small gifts from the jury, namely nail clippers, files, and a penknife. Appellant was aware of the gifts during the trial because the trial court thanked the jurors for the tokens in open court, in the presence of both parties. In denying the motion for new trial, the trial court stated that the gifts were acknowledged in open court and that Appellant should have objected at that time.

■ We agree with the trial court that Appellant should have objected at the first opportunity when the gift was brought to the attention of the parties. A contemporaneous objection is necessary in order to preserve an issue for appellate review. *Callahan v. Clark,* 321 Ark. 376, 901 S.W.2d 842 (1995). Appellant's failure to make a contemporaneous objection below precludes our review of the issue on appeal.

*Remarks During Opening Statement*

For his next two points for reversal, Appellant argues that the trial court erred in refusing to grant a new trial due to Appellee's counsel's remarks made during opening statement involving an alleged misstatement of law and counsel's use of a chart, which listed possible causes of the decedent's death.

The alleged misstatement of law involved Appellee's counsel's remarks regarding the nurses' use of their professional medical judgment in caring for patients. Appellant argues that the use of such language improperly apprised the jury of the wrong standard of care in this case. The record reflects that Appellee's counsel stated:

> [N]ursing is not an exact science. There are a lot of unknowns about what happens to a human body during and after surgery. And the medicinal trial in this case is that of several different people, human beings, nurses, who were exercising their professional medical judgment in taking care of a patient after surgery.

When Appellant objected below, the trial court sustained the objection. In response to the trial court's inquiry as to what relief he was seeking, Appellant indicated that he was asking that Appellee not be permitted to make reference to the defense in any way utilizing "nurse's judgment." The trial court instructed Appellee's counsel to refrain from using that term and stated that it would instruct the jury as to the relevant law at the appropriate time. Additionally, the trial court offered to give the jury a cautionary instruction on the issue, but Appellant declined the offer.

Appellant now argues that the remarks by defense counsel constituted reversible error. We disagree. Given the context in which the term was used, we are not persuaded that such remarks amounted to an improper instruction as to the relevant standard of care. Appellant has failed to demonstrate how counsel's remarks prejudiced him, other than the bare allegation that the remarks constituted reversible error. Furthermore, Appellant is entitled to no relief on appeal because he was the prevailing party on this issue in the trial court and because he received all the relief he requested. *Kelley v. Medlin*, 309 Ark. 146, 827 S.W.2d

655 (1992). Appellant refused the trial court's offer of a cautionary instruction to the jury, thus he should not now be heard to complain on appeal.

Appellant next contends that it was reversible error for Appellee's counsel to use a chart during opening statement to describe how Appellee's experts would testify regarding possible causes of the decedent's death. Appellant objected below to the fact that the chart referred to "causes of death," as it implied to the jury that Appellee's expert witnesses would testify to the exact cause of death. Appellant subsequently moved for a mistrial, arguing that defense counsel's use of the chart violated the trial court's previous ruling on Appellant's motion in limine. The trial court denied the motion.

We find no merit to this argument. Contrary to Appellant's assertion, the trial court's ruling did not prohibit Appellee's experts from testifying as to the possible causes of death; instead, the trial court merely ruled that Appellee's experts would not be able to testify differently than they had in their depositions. Notwithstanding its previous ruling, the trial court instructed Appellee's counsel to clarify to the jury that the causes of death that were listed on the chart were only possible causes of death. The chart itself was not admitted into evidence for the jury to consider; rather, it was used for demonstrative purposes only. Thus, under those circumstances, we can hardly conclude that the trial court abused its discretion in denying Appellant's motion for a new trial on this issue.

### Use of "Time Line"

For his next point for reversal, Appellant argues that the trial court abused its discretion in allowing Appellee to use a "time line," which listed specific times of events pertaining to the nursing care of decedent, during direct examination of its witnesses. Appellant contends that because the chart had been pre-marked by Appellee's counsel with the various times involved, the "time line" improperly shaped the witnesses' testimony and violated the trial court's invocation of A.R.E. Rule 615.

Appellee argued that the "time line" was merely used as a demonstrative tool to fill in the relevant times and events as each of the witnesses testified. The trial court allowed the use of the chart provided that nothing more was filled in and that no indications were made to it by Appellee's counsel until after the witnesses had given their testimony. The "time line" was not introduced into evidence for the jury's consideration; rather, it was used strictly for demonstrative purposes only.

■ ■ The admissibility and use of demonstrative evidence is a matter falling within the wide discretion of the trial court. *Mills v. State*, 322 Ark. 647, 910 S.W.2d 682 (1995). Appellant offers no convincing authority or argument in support of his contention and thus, he has failed to show that the trial court abused its discretion in allowing the use of such a demonstrative aid. We will not consider assignments of error that are unsupported by convincing legal authority or argument. *Schmidt v. Pearson, Evans, & Chadwick*, 326 Ark. 499, 931 S.W.2d 774 (1996).

### *Failure to Remove Jurors for Cause*

For his final point for reversal, Appellant argues that the trial court erred in failing to excuse for cause two potential jurors, Mr. McClanahan and Ms. Peterson. Appellant asserts that the court's failure to excuse those two persons for cause forced him to accept two other jurors that he would have otherwise removed from the panel.

During Appellant's *voir dire* of the potential jurors, Mr. McClanahan indicated that he did not understand why Appellant was not required to prove his claim beyond a reasonable doubt. When asked by Appellee's counsel whether he would listen to the judge's instructions and follow the law as instructed, Mr. McClanahan indicated that he would follow the law. Appellant later moved to strike Mr. McClanahan for cause on the ground that he would hold the Appellant to a higher standard of proof than was required by law. The trial court refused to strike the juror due to the fact that he had indicated that he would follow the law as instructed by the court. The trial court further remarked that it

was Mr. McClanahan's first time to sit on any type of jury and that, as such, he was bound to be a little confused as to the law, but no more so than any other new juror.

Also during *voir dire*, Appellant's counsel questioned Ms. Peterson about her work in a medical laboratory in Little Rock, Arkansas. Appellant's counsel inquired as to whether Ms. Peterson worked with any physicians associated with Saline Memorial Hospital, and she indicated that she was not aware of any connection with that hospital. Ms. Peterson apparently did some checking during a break and later reported that one of the doctors that she worked for was on the staff of that hospital. In response to further questioning by Appellant's counsel, Ms. Peterson stated that her working relationship with that doctor would not cause any bias on her part. The trial court denied the motion to excuse Ms. Peterson for cause on the basis that Ms. Peterson had stated unequivocally that her working relationship with that particular doctor would not cause her any problems in hearing the case.

The following day, after the jury had been chosen and qualified to hear the case, Appellant moved to "complete" his motion to excuse jurors McClanahan and Peterson for cause. Appellant argued that because the trial court had refused to strike Mr. McClanahan and Ms. Peterson for cause, Appellant was forced to use two of its three peremptory challenges to remove the jurors and was thus unable to use those challenges on two additional jurors, Mr. Shepard and Mr. Wood. The trial court held that because the jury had already been qualified, it would not entertain Appellant's motion. The record reflects that Mr. Shepard and Mr. Wood sat on the jury and that Appellant exhausted all of his peremptory challenges. Interestingly, the record further reflects that Ms. Peterson also sat on the jury, contrary to Appellant's claim that he had been forced to use one of his peremptory challenges to remove her.

To preserve for appeal an objection to an empaneled juror, a party is required to have exhausted his or her peremptory challenges and must show that he or she was forced to accept a juror *who should have been excused for cause. Cooper v. State,* 324 Ark. 135, 919 S.W.2d 205 (1996). Persons comprising the

venire are presumed to be unbiased and qualified to serve, and the burden is on the party challenging a juror to prove actual bias. *Id.* When a juror states that he or she can lay aside preconceived opinions and give the accused the benefit of all doubts to which he is entitled by law, a trial court may find the juror acceptable. *Id.* The issue of a juror's qualifications lies within the sound discretion of the trial court and we will not reverse such decision absent an abuse of discretion. *Wal-Mart Stores, Inc. v. Baysinger,* 306 Ark. 239, 812 S.W.2d 463 (1991).

In the present case, it is clear that Appellant did not make a motion to have Mr. Shepard or Mr. Wood excused for cause. The only objection to either one of those jurors was made after the jury had already been qualified and seated, and was further not made on the basis that the two jurors should have been struck for cause, only that Appellant would have used his peremptory challenges to remove them from the jury. The trial court did not abuse its discretion in refusing to entertain the late motion or in refusing to excuse the first two jurors for cause, as Appellant failed to demonstrate that they were biased or otherwise unqualified to sit on the jury.

Based upon the foregoing reasons, we conclude the trial court did not abuse its discretion in refusing to grant Appellant's motion for new trial and we affirm the judgment in favor of Appellee. Hence, we do not reach the issue on cross-appeal, whether the Boswell firm should have been disqualified from representing Appellant in this matter, as our decision to affirm on appeal renders that issue moot.

LEO "BUD" CARNEY and NORMAN MARK KLAPPENBACH, Sp.JJ., join in this opinion.

GLAZE and THORNTON, JJ., not participating.