Larry JONES *v.* James D. PARRISH and Hope Parrish

97-350                                          954 S.W.2d 934

Supreme Court of Arkansas
Opinion delivered November 13, 1997

*Benson & Robinson, P.L.C.*, by: *Jon Robinson*, for appellant.

*Ray Hodnett* and *Jones Law Firm*, by: *Robert L. Jones III*, for appellees.

TOM GLAZE, Justice. Appellee James D. Parrish initiated this litigation, by suing Larry Jones, Jones's Warehouse Sales grocery store, and Eric Donald for negligence that caused injury to Parrish. The events leading to Parrish's injuries began at Jones's store where Donald and a friend, Timothy Branson, tried to purchase some groceries. When Donald presented a check with someone else's name printed on it, Jones asked for identification, and while Jones was attempting to verify the check, Donald and Branson departed the store, got in Donald's vehicle and drove away. Jones, who was an auxiliary police officer and auxiliary fireman for the City of Clarksville, saw the two men leave, so he got in his truck and followed them. From his truck, Jones called the police dispatcher, and told her that he was following two men in their vehicle because the men had just attempted to cash a forged check at Jones's store. Sometime during Jones's pursuit, Donald accelerated his car, and Jones responded in kind. While trying to keep Donald's car in sight, Jones turned on his four-way flashers and a red bubble light which he kept in his truck, pursuant to his duties as an auxiliary fireman. Both vehicles were speeding. Jones was about one-quarter of a mile behind Donald's car when it skidded out of control and collided with a Missouri Pacific Railroad vehicle. The Railroad vehicle in turn struck Parrish, who was standing nearby. Parrish was thrown twenty-five feet into the air before falling to the ground. Parrish brought this suit for injuries allegedly sustained and caused by Jones's and Donald's negligence.

This case was tried to a jury, which returned a verdict for Parrish in the amount of $150,000.00 and $5,000.00 for Parrish's wife.[1] The jury assigned Donald to be eighty percent at fault and Jones twenty percent at fault. Because a pretrial settlement had

---

[1] Parrish and his wife were plaintiffs in the lawsuit. For convenience, we in most instances refer to Parrish in the singular.

been entered between Jones's business, Warehouse Sales, its insurance carrier (Argonaut Great Central Insurance Company), Timothy Branson,[2] and Mr. and Mrs. Parrish, the trial court reduced the jury award, but not in accordance with Jones's request. Since the Warehouse Sales's insurance company paid $15,000.00 in settlement of the store's possible liability, Jones claimed he should have received full credit in that amount against the amount he owed under the jury award. Instead, the trial court determined the $15,000.00 was to be divided equally between the Parrishes and Branson. Jones assigns this and two other errors he claims warrant reversal on appeal.

In his first argument, Jones urges the trial court erred in rejecting an interrogatory which he requested be given to the jury. That interrogatory was proffered during the trial court's conferencing of jury instructions. While that conference is abstracted, the abstract skips parts of the record, making it difficult to determine what exactly took place. Thus, since we are affirming this case, the record has been definitively read to be sure the parties' relevant objections and proffered documents are set forth.

In conferencing with counsel, the trial court first considered AMI Civ. 3d 306 which was based on Ark. Code Ann. § 12-9-303 (Repl. 1993), and reads as follows:

## AMI CIVIL 3d, 306

When I use the word "fault" in these instructions, I mean negligence.

### 12-9-303 AUTHORITY OF OFFICERS

(a) An auxiliary law enforcement officer shall have the authority of a police officer as set forth by statutes of this state when the auxiliary law enforcement officer is performing an assigned duty and is under the direct supervision of a full-time certified law enforcement officer.

---

[2] Branson, Eric Donald's passenger, was also injured in the accident and had a claim against Jones.

> (b)   When not performing an assigned duty and when not working under the direct supervision of a full-time certified law enforcement officer, an auxiliary law enforcement officer shall have no authority other than that of a private citizen.

Parrish objected to the court's giving AMI Civ. 3d 306, stating the instruction was untimely. He also complained that AMI Civ. 3d 306 was misleading because Jones offered no instructions on the statutes generally referenced in AMI Civ. 3d 306. The trial court disagreed and overruled Parrish's objection.

The next relevant matter raised was Jones's proffer of a modified AMI Civ. 3d 911 instruction which provides as follows:

> One issue you must decide is whether Larry Jones was acting as an auxiliary policeman at the time and place of the occurrence. If you find that Larry Jones was in the immediate pursuit of an actual and suspected law violator and was operating a red rotating emergency light on his vehicle which he was driving, then his vehicle may be considered an authorized emergency vehicle, and he was entitled to operate the vehicle in accordance with the following traffic laws applicable only to emergency vehicles:
>
> (a)   Relieved of the obligation to obey speed limits, and
>
> (d)   Emergency vehicles have the right of way over other vehicles.
>
> It does not relieve Larry Jones of the duty to exercise ordinary care for the safety of others. It is for you to decide if Larry Jones was an auxiliary police officer and whether he was operating an authorized emergency vehicle.

After the trial court refused the foregoing modified instruction, Jones then proffered the following interrogatory:

> Do you find by a preponderance of the evidence that Larry Jones was acting within the course and scope of his authority as an auxiliary police officer for the City of Clarksville at the time of the occurrence? Answer yes or no.

Parrish again objected, stating the interrogatory is an entirely new issue to be submitted to the jury upon which there has been no

previous instruction offered. He continued that, even if the jury were to find that he was an auxiliary police officer, that did not give Jones the authority to exceed the speed limits because he was not in an authorized vehicle. The trial court sustained Parrish's objection, saying, "I think that interrogatories number one through [five] that already have been agreed upon cover the situation."

Although Jones offered no argument or explanation to the trial court below concerning why he believed he was entitled to the interrogatory above, he argues on appeal that, at the time of Donald's accident, Jones, as an auxiliary police officer, was obeying a direct order from his supervisor, the city chief of police, to keep Donald's car in sight. Based on giving an instruction and interrogatory, concerning whether Jones was acting as an auxiliary officer at the time of the accident, he submits the jury could have found he was not negligent.

We find the record confusing when comparing the argument at trial with the one Jones now puts forth. Adding to that confusion is the manner by which Jones frames his legal issue on appeal. In this respect, Jones solely attacks the trial court's refusal to give his proffered interrogatory, but asks no reversal for the trial court's failure to give his proffered instruction.[3] While Jones acknowledges the trial court gave AMI Civ. 3d 306, which sets out the authority of auxiliary officers under § 12-9-303, he offers no argument why 306 was not sufficient to cover the theory of his case.

Moreover, assuming Jones is also challenging in this point for reversal the trial court's refusal to give his modified 911 instruction, that proffered instruction raises other questions. One, Jones modified AMI Civ. 3d 911 by adding language such as "You must decide . . . *whether Larry Jones was acting as an auxiliary policeman*" and "if you find Larry Jones was in pursuit of [a] violator and was operating a red rotating emergency light *on his vehicle . . . then his vehicle may be considered an authorized emergency vehicle . . . .*"

---

[3] In the text of his argument, Jones does recite his proffered modified AMI 911, and later generally cites authority for the proposition that it is error to refuse an instruction which is supported by the evidence.

The initial added language underscored in Jones's 911 instruction is already covered in 306 which defines when an auxiliary officer shall and shall not have the authority of a police officer. Also, the other underscored, added language in Jones's 911 instruction suggests Jones's truck, when equipped with a red rotating light, could be an authorized vehicle; however, Jones cites no legal authority for this proposition. Rather, we point out that the existing AMI Civ. 3d 911 defines an emergency vehicle as being an ambulance, fire truck, or police car, and makes no mention of a police officer's private vehicle.

While AMI Civ. 3d 911's note on use and comment refer to Ark. Code Ann. §§ 27-37-202 (Repl. 1994) and 27-49-219(d) (Repl. 1994), which cover flashing lights on emergency vehicles and define "authorized emergency vehicle," Jones made no mention of these statutes at trial when offering his modified 911 instruction. In defining "authorized emergency vehicle," § 27-49-219(d) includes (1) motor vehicles equipped with *blue* rotating or flashing emergency lights used by governmental *police agencies*; (2) vehicles equipped with *red* rotating or flashing emergency lights owned and used by *volunteer firefighters* while engaged in official duties, and (3) vehicles equipped with *amber* flashing or rotating emergency or warning lights and owned by *private individuals whose use is* determined by the Commissioner of Motor Vehicles, in accordance with regulations to prevent abuses thereof, to be for extra hazardous service. (Emphasis added.) Although these statutory provisions do not appear to help Jones, Jones presents no other argument regarding how his truck could even be considered an authorized emergency vehicle as he asserts in his 911 instruction.

■ In sum, we reiterate that Jones failed to articulate his reason or cite any law to the trial court in support of the giving of AMI Civ. 3d 911, as modified. For these reasons alone we need not consider his argument on appeal.

■ We add, somewhat in the same vein, that a trial court need not give an instruction which needs explanation, modification, or qualification, but to the contrary, the instruction offered must be simple, impartial, and free from argument. *Pineview*

*Farms, Inc. v. Smith Harvestore, Inc.*, 298 Ark. 78, 765 S.W.2d 924 (1989). Here, as we have discussed, Jones's proffered 911 instruction is confusing and is clearly not free from argument. We conclude the trial court correctly rejected Jones's modified 911 instruction.

■ Because Jones's proffered interrogatory argument is dependent upon his 911 instruction, we hold the trial court was correct in refusing his interrogatory, as well.[4] Under Rule 49 of the Rules of Civil Procedure, the trial court has the discretion to submit to the jury written interrogatories upon one or more issues of fact. In this respect, we find no abuse of discretion in the trial court's refusal here, especially since Jones has never fully explained the trial court's error in its finding that the five interrogatories that had been agreed upon were sufficient to cover the parties' respective cases. Although there may have been another appropriate or possible instruction to warrant an interrogatory such as the one proffered by Jones, we hold no such clear and simple instruction was proffered in this case. Therefore, we affirm on this point.

Jones's second point concerns whether the trial court violated Ark. Code Ann. § 16-64-115 (Repl. 1993) when, after the jury retired for deliberation, it answered the juror's question, "Does Mr. Parrish have any future recourse in a court of law for the future wages if he loses his job after this ruling?" Over Jones's objection, the trial court answered, "Not as far as this claim is concerned."

Jones argued below, and now on appeal, that no testimony was presented as to what recourse Parrish might have in a court of law if he lost his job after this ruling, and the trial court's answer was based on speculation and conjecture. He further argues that Parrish's employer was not a party to the lawsuit, and if Parrish was terminated after this lawsuit, nothing prevented him from seeking recourse in court against his employer. Jones urges that

---

[4] Jones argues on appeal that, as an auxiliary police officer, he was immune from suit, and if the trial court had received his interrogatory and the jury found him to be an auxiliary officer, he would have been shielded from liability. This argument was not ruled on below, so this court will not consider it on appeal. *Lively v. Libbey Memorial Physical Medicine Ctr., Inc.*, 311 Ark. 41, 841 S.W.2d 609 (1992).

because the trial court's answer did not relate to evidence in the case, nor did the answer pertain to a question of law, the trial court abused its discretion in answering the jury's question. We disagree.

■ Here, the trial court carefully worded its answer to correlate to the jury's question, and, in doing so, limited its response so the jury would understand that Parrish had no future recourse as far as *this claim* is concerned. The law is well settled that the trial court has broad discretion to decide what information should be given to the jury. *National Bank of Commerce v. HCA Health Services of Midwest, Inc.*, 304 Ark. 55, 800 S.W.2d 694 (1990); *Dickerson Constr. Co., Inc. v. Dozier*, 266 Ark. 345, 584 S.W.2d 36 (1979); *Rose v. King*, 170 Ark. 209, 279 S.W.2d 373 (1926). Here, Jones fails to show the trial court abused its discretion in giving the narrow and carefully worded response it made to the jury.

Jones's last argument suggests the trial court erred when it failed to give him full credit for the $15,000.00 pretrial settlement amount his company, Warehouse Sales, paid for being dismissed from the lawsuit. Prior to trial, counsel for the Parrishes, Branson, Jones, and Warehouse Sales orally agreed that Warehouse Sales would pay $15,000.00 for the company's release, but the Parrishes reserved their rights to continue against Jones, individually. Some confusion arose over exactly how the settlement amount would be credited.

After the jury verdict, but before judgment was entered, the Parrishes notified the trial court that the Warehouse Sales settlement amount was divided equally with $7,500.00 going to the Parrishes and $7,500.00 to Branson. Counsel for the Parrishes and Jones voiced opinions that they thought all $15,000.00 would be paid the Parrishes, but instead, the release signed by the Parrishes, their counsel, and Branson reflected the amount divided between Branson and the Parrishes. To confuse matters further, one counsel for the Parrishes later said, sometime during trial, that Branson was to receive compensation in the amount of $7,500.00. Consistent with that understanding, the text of the release read that the $15,000.00 amount was paid in compromise of the claims

of the Parrishes and Branson against Warehouse Sales and its insurance carrier, Argonaut Great Central Insurance Company.

■ Of course, Jones asserts his belief that, at pretrial conference, all parties' interests were represented by counsel and no specific mention was made that Branson should receive $7,500.00. Consequently, Jones lays claim to the full amount. However, because of the considerable confusion surrounding who was to be credited the settlement monies, we believe the trial court resolved this matter soundly. Since the liability exposure of Warehouse Sales and its insurance company was separate from Jones's, those entities had a right to agree to limit and allocate their liability against the claims of the Parrishes and Branson in any manner they chose.

For the reasons hereinabove, we affirm the trial court's rulings on all points.